UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
AMAURIS RODRIGUEZ,

                              Plaintiff,

     -against-

THE CITY OF NEW YORK, CAROLYN NITOWITZ,
BRYAN CULLEN, JOSEPH MCEVOY, JUANA ORTIZ,
& JOHN DOE,

                              Defendants.
-----------------------------------------------------------------x

**CV 14 - 00347**

**COMPLAINT**

**JURY TRIAL DEMANDED**

COGAN, J.

Plaintiff, AMAURIS RODRIGUEZ, by and through his attorneys, **THE LAW OFFICE OF SCOTT G. CERBIN, ESQ., PLLC**, complaining of the defendants herein, respectfully shows the Court and alleges:

### PRELIMINARY STATEMENT

1. This is a civil rights action in which the plaintiff seeks relief for the defendant's violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988; by the United States Constitution, including its Fourth and Fourteenth Amendments, and by the laws and Constitution of the State of New York. The plaintiff seeks damages, both compensatory and punitive, affirmative equitable relief, an award of costs and attorney's fees, and such other and further relief as this court deems just and equitable.

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked under 28 U.S.C. § 1343 and 42 U.S.C. §§ 1983 and 1988.

3. The plaintiff further invokes this court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

4. Venue herein is proper for the United States District Court for the Eastern District of New York under 28 U.S.C. § 1391 (a), (b) and (c).

## **NOTICE OF CLAIM**

5. Plaintiff filed a Notice of Claim with the Comptroller of the City of New York on or about April 22, 2013 within 90 days of the events complained of herein. More than 30 days have elapsed since the filing of the Notice of Claim, and adjustment or payment thereof has been neglected or refused.

## **PARTIES**

6. Plaintiff AMAURIS RODRIGUEZ is 26 years old and at all times hereinafter mentioned was and still is a citizen of the United States residing in the State of New York and the County of Kings.

7. Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized to maintain a police department, which acts as its agent in the area of law

enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

9. Defendants NITOWITZ, CULLEN, MCEVOY and DOE are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of Defendant THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of THE CITY OF NEW YORK. Defendants NITOWITZ, CULLEN, MCEVOY and DOE are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants NITOWITZ, CULLEN, MCEVOY and DOE are sued individually.

**FIRST INCIDENT**

10. On or about April 16, 2013 Plaintiff Amauris Rodriguez was arrested in Kings County upon a felony complaint drafted by Police Officer Brian Cullen of the 73rd Precinct. The information contained in the complaint was purportedly based upon information provided by Police Officer CAROLYN NITOWITZ of the same command.

11. According to the felony complaint, on April 8, 2013 NITOWITZ observed Mr. Rodriguez hand a leather bag to a Ms. Abria Sanders. NITOWITZ then apparently

detained Sanders and recovered a loaded .45 caliber semi-automatic pistol from the leather bag. Sanders was charged with and ultimately indicted on felony weapon charges. Shortly thereafter Mr. Rodriguez was also charged with felony weapon possession and bail was set at $7,500.00 cash or bond. The district attorney offered him two-years in state prison in exchange for a plea of guilty to a reduced charge.

12. Plaintiff was falsely arrested by Defendants even though he was not in possession or constructive possession of contraband.

13. Defendants falsely informed employees of the Kings County District Attorney's Office that Plaintiff was in possession of contraband and fabricated police paperwork and a sworn felony complaint, to that effect.

14. Defendants had not observed Plaintiff in possession of contraband.

15. On April 19, 2013 Mr. Rodriguez testified before a Kings County grand jury. Rodriguez told the grand jury that he had not had any contact, at all, with Ms. Sanders on April 8, 2013 because he was forbidden from doing so pursuant to an order of protection issued by Kings County criminal court.[1] He denied ever possessing a gun and handing a leather bag to Sanders. He denied ever being in the vicinity and specifically pointed out that the area in which the crime allegedly occurred, a New York City Housing Authority ("NYCHA") property, contained numerous security cameras. The grand jury credited Rodriguez's testimony; and thus necessarily discredited that of Defendants. On August 19, 2013 the grand jurors returned a no true bill as to all charges against Rodriguez. He was released after four days in custody.

---

[1] At the time of this incident Sanders and Rodriguez had domestic violence cases pending against each other in Kings County criminal court.

4

**SECOND INCIDENT**

16. On or about May 21, 2013 Police Officer JOSEPH MCEVOY observed Plaintiff Amauris Rodriguez enter the lobby of 300 Dumont Avenue, a NYCHA property. Mr. Rodriguez was en route to visit his aunt Anna Maria Rivera (Ms. Rivera) who was and still is a resident of Apartment 4H. MCEVOY recognized Mr. Rodriguez and he promptly confronted him and asked Rodriguez if he lived in the building. When Mr. Rodriguez replied in the negative MCEVOY directed Police Officer JOHN DOE to "arrest him". MCEVOY specifically said that "this is the guy who beat the gun case".

17. When neighbors saw what was happening they promptly notified Ms. Rivera. In fact, a neighbor known to Plaintiff specifically told MCEVOY that Ms. Rivera was coming down to tell them Rodriguez was her nephew and had permission to be there. Upon hearing this they quickly left the scene to avoid Ms. Rivera.

18. Ms. Rivera then followed them to the precinct where she pleaded with the MCEVOY to release Rodriguez. MCEVOY responded that he was not going to release Plaintiff, he was going to punish Plaintiff, and Plaintiff would not get out until tomorrow.

19. Defendants falsely informed employees of the Kings County District Attorney's Office that Plaintiff was trespassing and fabricated police paperwork, a sworn complaint, and supporting deposition, to that effect.

20. Defendants knew that Plaintiff was not trespassing and they arrested him out of malice and in retaliation for the first incident.

21. Mr. Rodriguez was charged with criminal trespass and he spent the night in custody. He thereafter made several court appearances before the case was resolved. On August 1, 2013, Ms. Rivera submitted an affidavit in support of dismissal of the

5

perjured criminal complaint specifically detailing the facts outlined above. On October 4, 2013, the district attorney consented to dismissal of all charges.

22. All of the above described actions of each of the individual defendants were performed within the scope of their employment and authority, and for whose acts Defendant City is liable under the doctrine of *resondeat superior*.

## AS AND FOR A FIRST CAUSE OF ACTION
Unlawful Stop and Search

23. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

24. Defendants twice violated Plaintiff's rights secured under the Fourth and Fourteenth Amendments when they stopped and searched Plaintiff without reasonable suspicion.

25. As a result of the foregoing, plaintiff was deprived of his liberty, suffered great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A SECOND CAUSE OF ACTION
False Arrest

26. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

27. Defendants twice violated Plaintiff's rights secured by the Fourth and Fourteenth Amendments because they arrested Plaintiff without probable cause.

28. As a result of the foregoing, plaintiff was deprived of his liberty, suffered great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A THIRD CAUSE OF ACTION
Malicious Prosecution

29. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

30. Defendants twice violated the Defendant's Fourth Amendment rights because they: 1) initiated the prosecution of Plaintiff, (2) lacked probable cause to support either the arrest, continued confinement, or prosecution, (3) acted with malice, (4) caused Plaintiff to sustain damages, and (5) the proceedings terminated in Plaintiff's favor.

31. As a result of the foregoing, plaintiff was deprived of his liberty, suffered great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A FOURTH CAUSE OF ACTION
Falsification of Evidence

32. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

33. Defendants twice violated the Defendant's Fourteenth Amendment rights because they falsified evidence against him by creating false evidence and forwarding the same to prosecutors, and by testifying falsely before the grand jury.

34. As a result of the foregoing, plaintiff was deprived of his liberty, suffered great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A FIFTH CAUSE OF ACTION
42 U.S.C. §1983 - Monell Claim

35. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

36. Prior to May 21, 2013, the City developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of Mr. Rodriguez's rights.

37. It was the policy and/or custom of the City to investigate inadequately and improperly civilian complaints of police misconduct. Instead, acts of brutality were tolerated by the City. The Internal Affairs Bureau (IAB) and the Civilian Complaint Review Board (CCRB) have substantially failed to investigate, deliberate, and discipline transgressors. For instance, IAB investigations of brutality rarely lead to administrative trials and when they do, and the charges are somehow sustained, the punishment is minimal, lacking any deterrent effect.

38. The City has been on notice for more than a generation that brutality is widespread and that particular reforms need to be implemented. From reform-minded Commissioner Patrick Murphy to the Mollen Commission twenty-five years later, the City has been repeatedly cautioned that a systemic tolerance for brutality flourishes throughout the NYPD. Twenty years before plaintiff was brutalized, the Mollen Commission report noted, "This tolerance, or willful blindness, extends to supervisors as well. This is because many supervisors share the perception that nothing is really wrong with a bit of unnecessary force and because they believe that this is the only way to fight crime today." *Mollen Comm. Report*, at 49.

39. It was the City's policy and/or custom to supervise and discipline officers inadequately, including the defendant officers, thereby failing to discourage constitutional violations on the part of its police officers.

40. Police officers of the City of New York have for years engaged in a pattern and practice of actively and passively covering up the misconduct of fellow officers by failing to come forward or failing to accurately give evidence as to misconduct of which they are aware, thereby establishing and perpetuating a "code of silence."

41. This "code of silence" is a custom deeply ingrained in the members of the New York City Police Department so as to constitute the actual policy of the City of New York.

42. The City has been deliberately indifferent to the need for more or different training, rules and regulations relating to police officers who witness or have information regarding misconduct by fellow officers. The City has failed to properly sanction or discipline officers who are aware of and subsequently conceal and/or aid and abet violations of constitutional rights of citizens by other New York City police officers, thereby causing and encouraging New York City police officers, including the individual defendant officers in this case, to violate the rights of citizens such as Mr. Maybank.

43. It is believed that the City has maintained no system or an inadequate system of review of officers who withhold knowledge or give false information regarding misconduct by fellow officers. This failure to identify and track such officers, including the defendant officers, or to discipline, more closely supervise, or retrain such officers who engage in the "code of silence," causes New York City police officers to believe that they can engage in misconduct, secure in the knowledge that their fellow officers will

neither intervene, nor give evidence against them. These systemic deficiencies include, but are not limited to:

a. Preparation of investigative reports designed to vindicate the conduct of officers who gave false information about the misconduct of other officers, or who falsely denied knowledge about misconduct which they were in a position to observe;

b. Preparation of investigative reports which uncritically rely solely on the word of police officers and which systematically fail to credit testimony of non-police witnesses;

c. Preparation of investigative reports which omit or ignore factual information and physical evidence which contradict the accounts of police officers;

d. Issuance of public statements exonerating officers involved in such incidents prior to the completion of investigation;

e. Failure to have meaningful review of investigative reports by responsible superior officers for accuracy or completeness, including consideration of the conduct of officers who were not actively engaged in the misconduct which was the subject of the investigation, and acceptance of conclusions which are not supported by the evidence or which contradict such evidence; and,

f. Failure to identify potential "code of silence" violations and maintain accurate records of allegations of such misconduct.

44. The City, prior to and at the time of this incident, was aware of the need for more or different training, rules, regulations, investigation and discipline relating to police officers who practice the "code of silence," and was deliberately indifferent to that need.

45. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger of harm to citizens like plaintiff and the need for more or different training and discipline are policies, practices, and customs of the City of New York and have caused police officers, including the officer defendants in this case, to believe that they can violate the rights of citizens with impunity, and that their fellow officers would conceal such conduct, including swearing falsely and committing perjury, all with the foreseeable result that officers are more likely to violate the constitutional rights of citizens.

46. As a direct and proximate result of the City's deliberate indifference, defendants violated Mr. Rodriguez's constitutional rights for which he suffered substantial damages.

WHEREFORE, plaintiff demands the following relief jointly and severally against all of the defendants:

    a. Compensatory damages;

    b. Punitive damages;

    c. The convening and empaneling of a jury to consider the merits of the claims herein;

    d. Costs and interest and attorneys' fees;

    e. Such other further relief as this court may deem appropriate.

Dated: Brooklyn, New York
January 16, 2014

Respectfully submitted,

**SCOTT G. CERBIN, ESQ., PLLC**
Counsel for the Plaintiff

By: Scott G. Cerbin (SC5508)
16 Court Street, Suite 2901
Brooklyn, NY 11241
(718) 596-1829